Case 4:19-cv-02679   Document 36   Filed on 08/30/21 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
August 30, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WENDY MECHELLE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-02679 |
| | § | |
| USA INDUSTRIES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Pending before the Court is the defendant's, USA Industries, Inc., motion for summary judgment (DE 26), the plaintiff's, Wendy Mechelle, response in opposition (DE 30), and the defendant's reply (DE 31). Also before the Court is the plaintiff's motion for partial summary judgment (DE 32) and the defendant's response in opposition (DE 33). The Court concludes that a reply by the plaintiff is unnecessary. After having carefully considered the parties' submissions, the record, and the applicable law, the Court determines that the defendant's motion for summary judgment should be **GRANTED** and the plaintiff's motion for partial summary judgment should be **DENIED**.

**II.   FACTUAL BACKGROUND**

USA Industries, Inc. (the "Company") is a commercial and industrial equipment manufacturer located in Houston, Texas. The Company hired the plaintiff as a marketing manager on February 13, 2018 and terminated her on October 3, 2018. On October 3, prior to learning of her termination, the plaintiff told her manager, Justin Watts, that she needed to bring her service dog to work with her and gave him a note from her physician which stated that doing so would be

beneficial for her heart condition. Watts told the plaintiff that he would need to discuss the matter with Michael Chin, the Company's Human Resources manager.[1]

That night, Watts called the plaintiff and informed her that, due to her documented performance issues, the Company had already planned to terminate her employment on Friday, October 5. He further stated: "[G]iven that you have requested the accommodation that you did, . . . there is really a process for that, but it didn't really make sense for me to have you go through that process with Michael with HR, if we only plan on employing you for two more days." Watts concluded by telling the plaintiff that she was terminated effective immediately but that she would be paid through the remainder of the week.

During the plaintiff's tenure with the Company, her colleagues frequently observed that her performance was lacking. In March 2018, one of her co-workers stated in an internal memo that the plaintiff underperformed in completing simple tasks and lacked discipline and job skills. In the summer of 2018, another marketing manager informed Watts that, despite repeated training sessions, the plaintiff had not progressed in learning the marketing department's software programs and that continuing to try to train her was "a waste of the company's money." On May 22, 2018, Watts conducted the plaintiff's 90-day performance review, highlighting numerous areas where the plaintiff needed to improve and listing the plaintiff's overall rating as "Needs Improvement" in her written evaluation. On June 12, 2018, after the plaintiff disputed the review in writing, Watts wrote to Michael Chin and Watts' superior, Jonathan Michel, that the Company "probably need[s] to prepare for her resignation or termination asap."

In July 2018, the Company began working with a staffing agency to find a replacement for the plaintiff and interviewed several candidates over the next few months. In July and August,

---

[1] While the Company disputes whether the plaintiff had a legitimate need for the accommodation, the Court need not address this controversy to resolve the parties' motions.

Watts logged the plaintiff's continuing performance issues, which included absences, repeated failure to revise marketing content as requested, poor execution of marketing events, and difficulty communicating with other employees and outside individuals. On October 2, 2018, the day before the plaintiff requested to bring her service dog to work, Watts informed the Company's IT manager that the Company had planned to terminate the plaintiff on October 5, but that the termination "may have to happen today." For reasons that are unclear, the Company was unable to terminate the plaintiff on October 2 but did so the following evening.

After obtaining a "right to sue" letter from the Equal Employment Opportunity Commission, the plaintiff sued the Company, asserting claims under the Americans with Disability Act (ADA), 42 U.S.C. § 12101 *et seq.*,[2] and Chapter 21 of the Texas Labor Code. The parties now move for summary judgment.

### III. CONTENTIONS OF THE PARTIES

The plaintiff contends that the Company unlawfully discriminated against her, in violation of the ADA and Chapter 21, by not making a reasonable accommodation for her disability and, instead, terminating her after she requested the accommodation. She further asserts that her termination constituted unlawful retaliation by the Company. The plaintiff moves for summary judgment on her disability discrimination and retaliation claims.

The Company responds that, at the time the plaintiff made her accommodation request, it had already decided to terminate her based on her poor performance. Because the Company had already intended to end the plaintiff's employment for legitimate nondiscriminatory reasons, it contends that it did not violate the anti-discrimination statutes and is entitled to summary judgment on all of the plaintiff's claims.

---

[2] The ADA provisions relevant to this suit incorporate the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (codified as amended in scattered sections of 42 U.S.C. (2009)).

## IV. STANDARDS OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v.*

*Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence . . . is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## V.     ANALYSIS AND DISCUSSION

### A.     The Disability Discrimination Claims

Under the ADA and Chapter 21, it is unlawful for covered employers to discriminate against qualified employees on the basis of disability. *See* 42 U.S.C. § 12112(a); Tex. Lab. Code §§ 21.051; *Sanchez v. Dallas/Fort Worth Intern. Airport Bd.*, 438 F. App'x 343, 346 (5th Cir. 2011).[3] Absent direct evidence of discrimination, courts apply the familiar *McDonnell Douglas* burden-shifting framework. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241–42 (5th Cir. 2017) (setting forth the *McDonnell Douglas* framework). Where the plaintiff offers direct evidence of discrimination, the burden shifts to the defendant to show that it would have terminated the plaintiff absent the evidence of discrimination. *Etienne v. Spanish Lake Truck & Casino Plaza LLC*, 778 F.3d 473, 477 (5th Cir. 2015). Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Martin v. Bayland Inc.*, 181 F. App'x 422, 423–24 (5th Cir. 2006) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002)).

The plaintiff asserts that the Company discriminated against her in two ways—by failing to accommodate her request to bring her service dog to work and by terminating her on the basis of her heart condition. As a threshold matter, the Court concludes that Watts' statement to the

---

[3] Because claims brought under Chapter 21 are analogous to ADA claims, courts treat both sets of claims similarly and apply the same federal legal framework to both. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 n.13 (5th Cir. 2004).

plaintiff concerning her termination during the October 3 phone call is not direct evidence of discrimination.[4] Accordingly, the *McDonnell Douglas* framework applies. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). Under that analysis, the Court determines that the plaintiff cannot establish causation with respect to her termination-based discrimination claim. This is because the undisputed evidence shows that the Company decided to terminate the plaintiff, at the latest, on October 2—before she notified the Company of her disability. Crucially, Watts informed the Company's IT manager on October 2 that he wanted to terminate the plaintiff that very day. Therefore, the plaintiff's disability could not, and did not, "have a determinative influence" on the Company's decision to terminate her. *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008)

Moreover, even if the plaintiff could establish the causation element of her *prima facie* case, the Company has adduced sufficient evidence that it terminated the plaintiff for a legitimate non-discriminatory reason—her documented poor performance. Thus, the plaintiff cannot show that the Company's proffered reason was pretextual.

For related reasons, the Company's decision not to agree to the plaintiff's accommodation request did not violate the ADA or Chapter 21. To prevail on a failure-to-accommodate claim, the plaintiff must show that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Neely v PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013). Here, the plaintiff fails to establish the first element of her claim—that she is a "qualified individual." *See* 42 U.S.C. § 12111(8) (defining a "qualified individual" as "an individual who, with or without reasonable accommodation, can

---

[4] As described *infra*, even if the Court considered Watts' statement to be direct evidence of discrimination, the plaintiff's claim would still fail because the Company has established by its proffer of evidence that it terminated the plaintiff for non-discriminatory reasons.

perform the essential functions of the employment position that such individual holds or desires."). Despite contending that she was a qualified individual, she offers no more than a scintilla of evidence to support this claim or to controvert the Company's ample evidence that she could not perform the essential functions of her position during her time with the Company.

The Court also agrees with other courts in this Circuit that "[i]n situations where an employee's termination based on a legitimate, nondiscriminatory reason has been made effective but has not yet been processed, courts must not permit the employee to use the ADA as a shield from being fired by suddenly requesting an accommodation before the ink on her valid termination papers is dry." *Green v. Medco Health Sol's. of Texas, LLC*, 947 F. Supp. 2d 712, 729 (N.D. Tex. 2013, *aff'd* 560 F. App'x 398 (5th Cir. 2014). *See also Jehling v. A.H. Belo Corp.*, No. 3:11–CV–1258–B, 2013 WL 5803813, at *16 (N.D. Tex. Oct. 28, 2013) (holding that a plaintiff could not use the protections of the FMLA to shield himself from a termination decision that had already been made prior to his request for FMLA leave). Consequently, the Company is entitled to summary judgment on the plaintiff's disability discrimination claims.

### B. The Disability Retaliation Claims

The plaintiff's disability retaliation claims also fail. The ADA and Chapter 21 prohibit retaliation against an employee for engaging in protected activity. *Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008); Tex. Lab. Code §§ 21.055. To establish a prima facie case of retaliation under the ADA and Chapter 21, a plaintiff must show that: (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 740 F.3d 450, 452 (5th Cir. 2013). "In order to avoid summary judgment, the plaintiff must show 'a conflict in

substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 740 F.3d at 454 (internal citation omitted).

In this case, the plaintiff cannot substantially dispute that the Company terminated her due to her poor performance. Accordingly, the Company is entitled to summary judgment on the retaliation claims.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the Court determines that the defendant's motion for summary judgment should be, and is, **GRANTED** and that the plaintiff's partial motion for summary judgment should be, and is, **DENIED**.

It is so **ORDERED**.

**SIGNED** and **ENTERED** this 30th day of August, 2021.

_____
Kenneth M. Hoyt
United States District Judge